IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MARCELINO SOLIS,              )
                              )
        Plaintiff,            )
                              )
v.                            )
                              )    Civil Action File
THE TACO MAKER, INC.,         )
FRANSGLOBAL CORPORATION,      )    No.  1:09-cv-3293-RWS
AND CARLOS BUDET,             )
                              )
        Defendants and        )
        Counterclaimants,     )
                              )
v.                            )
                              )
BUSCH, SLIPAKOFF & SCHUH,     )
LLP and SHANE STOGNER,        )
                              )
        Third-Party Defendants. )
_____)

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISQUALIFY BUSCH, SLIPAKOFF & SCHUH, LLP

COMES NOW, Plaintiff Marcelino Solis, ("Plaintiff") by and through his

undersigned counsel and files this his Response in Opposition to the Motion to

Disqualify Busch, Slipakoff & Schuh, LLP ("BSS") filed by Defendants The Taco

Maker, Inc. ("TMI"), Fransglobal Corporation ("FG") and Carlos Budet (" Budet")

(collectively as "Defendants") showing this Court that Defendants' Motion to Disqualify ("Motion") is without merit and must be denied in its entirety.

## BACKGROUND FACTS

In or about March, April and July 2008, Plaintiff was approached in Atlanta, Georgia concerning an investment opportunity whereby Plaintiff would invest in TMI/FG and thereby acquire an equity stake in TMI ("Equity Investment").[1] In addition, through this Equity Investment, Plaintiff's tortilla manufacturing company was assured of future lucrative food production contracts from TMI.[2] During the negotiations of the Equity Investment, Plaintiff was invited to Puerto Rico to attend a meeting with principals of TMI.[3] Plaintiff was accompanied on this trip with his counsel, Mr. Shane Stogner, ("Stogner").[4] After that trip, Stogner, at the behest of Plaintiff, drafted a Stock Purchase Agreement ("SPA") whereby Plaintiff would purchase certain shares in TMI from Miguel Lausell (the "Lausell Buyout").[5] During the onset of negotiations, Stogner received an email from Mr. Jose Aponte Carro, identifying himself as the lawyer for TMI.[6]

---

[1] Affidavit of Shane P. Stogner, ("Stogner Affidavit"), paragraphs 6 and 16.
[2] Id. at paragraph 8.
[3] Id. at paragraph 13.
[4] Id.
[5] Id. at paragraphs 10 and 12.
[6] A true and correct copy of this email is attached hereto as Exhibit A.

In July 2008, Plaintiff informed Defendants that any investment would also need to include a corporate restructuring of FG/TMI, along with new bank financing; Plaintiff demanded that Stogner be involved in this restructuring to ensure it was done properly.[7] Due to this request, Stogner sent a draft engagement letter ("Letter") to Defendants.[8]

On or about July 11, 2008, Plaintiff, through Stogner, informed Defendants he was not interested in pursuing the proposed Lausell Buyout and the SPA was never agreed to by the parties.[9] Soon thereafter, Budet approached Plaintiff again and assured Plaintiff that if he wired $125,000.00 to Puerto Rico that he would still be given an equity stake in FG/TMI and would still receive the lucrative food production contracts.[10] Based on these assurances by Budet, Plaintiff wired said sum.[11] Plaintiff was never given an equity stake in FG or TMI, and has never been given any food production contracts despite his investment.[12]

After this Court denied Defendants' Motion to Dismiss based on lack of personal jurisdiction (DE # 7), Defendants now allege that Stogner represented Defendants and that it is improper for BSS to bring suit against TMI, FG and

---

[7] Stogner Affidavit, paragraph 11.
[8] Id. at paragraph 20.
[9] Id. at paragraph 14.
[10] Id. at paragraphs 17, 18, and 19.
[11] Id. at paragraph 18.
[12] Id. at paragraphs 26 and 27.

Budet.[13]  However, no express or implied attorney-client relationship ever existed between Stogner and any of the Defendants.

STANDARD FOR DISQUALIFICATION

A party moving to disqualify counsel for the opposing party faces a high burden and Courts should be very careful in ordering disqualification.[14]  A party seeking disqualification must first prove that an attorney client representation actually existed between its client and opposing counsel.[15]  A party may prove the existence of an attorney-client relationship with direct evidence by showing that the person asserting the relationship paid the attorney fees, that party was not represented by his own counsel, and that party informed the attorney that he was relying on him for legal advice.[16]

STOGNER'S ROLE

On or about June 6, 2008, (at his previous firm of Taylor, Busch, Slipakoff & Duma, LLP), Stogner sent a Letter Of Intent to Mr. Thomas Torres as a Seller of stock in TMI effectuate the Equity Investment.[17]  In this letter Stogner sets forth

---

[13]  DE # 8.
[14]  Clough v. Richelo, 274 Ga.App. 129, 132 (2005).
[15]  Duvall v. Bledsoe, 274 Ga.App. 256, 257 (2005).
[16]  In re Infocure Securities Litigation, 210 F.Supp.2d 1331 (N.D. Ga. 2002).
[17]  See Exhibit B to DE # 3 ; This is the only document signed by Stogner in the record.

that he is acting "[a]s attorney for a party ("the Buyer").[18]  Stogner concludes his letter by stating that he is "prepared to meet with representatives of the Seller and its advisors to discuss further the terms of our proposal and to answer any questions you may have about the Buyer or our proposal."[19]  Negotiations with Torres did not lead to an agreement.

Thereafter, in connection with the next investment proposal, the Lausell Buyout, Stogner drafted a proposed SPA.[20]  The SPA specifically proposed that each party to the Lausell Buyout would shoulder their own costs, including that of counsel.[21]  However, the Lausell Buyout was never consummated, as Plaintiff declined to invest via the SPA.[22]

Soon thereafter, Stogner sent the proposed Letter to the attention of Defendant Budet, which was never signed.[23]  The Letter set forth a proposal for legal services and stated very clearly that a conflict would exist between Stogner's representation of TMI as he was currently representing "Marcelino Solis, a potential shareholder in the company".[24]  At all times, through all negotiations

---

[18] Id.
[19] Id.
[20] Stogner Affidavit, paragraph 10.
[21] See DE # 8-2, page 12 of 15; Section 11.07 of the SPA.
[22] Stogner Affidavit, paragraph 16.
[23] Id. at paragraphs 21 and 24.
[24] See DE # 8-4.

Defendants, were represented by their counsel, Jose Aponte Carro ("Carro").[25]   Mr.

Carro requested changes to the proposed SPA.[26]

### THE LAUSELL BUYOUT AND SPA WERE NEVER CONSUMMATED

Surprisingly, Defendants point to an unexecuted SPA which was never

consummated and involved a non-party to this case, to somehow allege that an

attorney-client relationship existed with Stogner.  During the drafting of the

proposed SPA, Stogner negotiated the terms with Carro, who represented the

Defendants as their outside counsel and eventually their in house counsel.[27]

Stogner sent numerous emails and correspondence which set forth a negotiation of

the terms of the SPA.[28]

As shown by the document itself, the necessary terms of the Stock Purchase

are not present, (the price, the number of shares transferred, the date of the

agreement).  Defendants' mysteriously point to an unexecuted arms-length

negotiated document which was never signed in an effort to justify their present

Motion.  However, at all times pertinent to the Lausell Buyout and thereafter,

---

[25]  Stogner Affidavit, paragraph 28.
[26]  True and correct copies of several emails from Jose Aponte Carro to Stogner are
attached hereto as Exhibit B.
[27]   Id. at paragraph 28.
[28]  See Exhibit B attached hereto.

Stogner represented only Plaintiff and negotiated with Carro, counsel for Defendants.

### THE LETTER WAS NEVER EXECUTED AND<br>DISCLOSED A POTENTIAL CONFLICT

Defendants aver that Stogner's unsigned Letter is also evidence that an attorney-client relationship existed.[29]   However, the Letter was never signed by Stogner or anyone at his firm.[30]   Nor was the Letter signed by anyone on behalf of the Defendants as required.[31]   The Letter states that Stogner will only be employed to work on the "possible recapitalization or refinancing of the company, corporate governance as well as any other general matters as we may otherwise mutually agree."[32]   The Letter was sent because Plaintiff demanded that as part of the transaction that Stogner would be need to be involved in the corporate restructuring and refinancing of FG/TMI.[33]

Interestingly, the Letter specfically  discloses and informs FG/TMI that a potential conflict would occur given Stogner's current representation of

---

[29] See DE # 8.
[30] See DE # 8-4.
[31] Id.
[32] Id.
[33] Stogner Affidavit, paragraph 11.

"Marcelino Solis a potential investor in the company".[34]   Stogner's Letter

concludes with the following paragraph:

> "Again, thank you for the opportunity to represent you pursuant to the
> terms of this engagement.  If the terms as stated herein are
> satisfactory, please sign, date and complete the requested information
> where indicated below and return this engagement letter to me,
> keeping a copy for your files."[35]

It is clear from the record that the Letter was never agreed to by either party, as the

copy attached to Defendants' Answer is unsigned by either Stogner or any of the

Defendants and cannot serve as a basis for an assertion of an attorney-client

relationship.[36]

### DEFENDANTS NEVER TOOK STEPS TO CREATE AN IMPLIED ATTORNEY-CLIENT RELATIONSHIP WITH STOGNER

Since no documetary evidence exists to establish an attorney-client

relationship, Defendants would necessarily have to rely on the proposition that an

implied attorney-client relationship arose between themselves and Stogner.

However, according to Georgia law, an implied attorney-client relationship cannot

occur where the person asserting the relationship never paid the attorney any fees,

---

[34] See DE # 8-4.

[35] Id.

[36] Id.

was represented by his own counsel, and never informed the attorney that he was relying on him for legal advice.[37]   Defendants cannot meet any of these criteria.

1. Neither Defendants, nor Stogner, ever signed the Letter.[38]   Therefore, neither party agreed to the terms of the Letter.   Defendants never forwarded the $1,000 retainer, nor did Stogner ever receive an hourly fee from Defendants.[39]

2. Defendants were represented by their own counsel at all times pertinent hereto.[40]   Defendant Carro was the outside counsel for both TMI/FG and then was appointed the COO and the CLO of FG/TMI.[41]

3. Defendants also never informed Stogner that they were seeking his advice or relying upon his advice as an attorney.[42]

All of Stogner's communications with the Defendants were done as arms-length negotiations concerning the terms of the SPA or in order to help Plaintiff complete a wire transfer of the investment monies.[43]   Stogner received no

---

[37] In re Infocure Securities Litigation, 210 F.Supp.2d 1331 (N.D. Ga. 2002).
[38] Stogner Affidavit, paragraph 24; See also DE # 8-4.
[39] Stogner Affidavit, at paragraph 25.
[40] Id. at paragraph 28.
[41] Id.
[42] Id. at paragraph 29.
[43] Id. at paragraphs 12 and 18.

information in negotiating the Equity Investment and or Lausell Buyout which would be confidential or detrimental to the Defendants in this action.

Defendants in this case cannot meet any of the three criteria set forth in In re Infocure Securities Litigation, therefore their Motion must be dismissed in its entirety.

## STOGNER IS NOT A NECESSARY WITNESS

Defendants alleged that Stogner and BSS should be disqualified from this action because Stogner is a necessary witness and cannot also serve as an advocate in this action.[44]  However, as demonstrated above, Defendants never had an express or implied attorney-client relationship with Stogner.  To the extent that Defendants plan on calling Stogner to testify in this action, that need is outweighed by Plaintiff's right to choose his counsel of choice.[45]  Regardless, Stogner is not a necessary witness in this action.

In order to disqualify an attorney based on his role as a necessary witness, the moving party must demonstrate that Stogner's knowledge is relevant to the disputed, material questions of fact and that there is no other evidence available to prove those facts.[46]  The Clough court also cited the case of Chapman Engineers v.

---

[44] See DE # 8.
[45] Martinez v. Housing Auth. of DeKalb County, 264 Ga.App. 282, 288(5)(2003).
[46] Clough, 274 Ga.App. at 132.

Natural Gas Sales Co., which held that a lawyer disqualification is not required if the lawyer's testimony will be merely cumulative of other evidence.[47]  Clearly, this is the situation with Stogner.

Stogner was involved in negotiations with TMI/FG on the Lausell Buyout, the SPA and the eventual wire transfer of $125,000.00.[48]  Several members of TMI/FG, including Defendant Budet, were adverse in these negotiations and the wire transfer.[49]  The Plaintiff, as well as his general manger of his food product manufacturing company, Adam Oliaro, can testify to the negotiations and can testify as to the alleged fraudulent statements that lead to his transfer of $125,000.00 for an equity investment in TMI/FG.[50]  Stogner's testimony would only be cumulative of Plaintiff and several of the Defendants.[51]  Defendants' assertion that Stogner is a necessary witness cannot serve as a basis for Defendants' present Motion.

CONCLUSION

Defendants have attempted to bootstrap their present Motion by citing to unexecuted documents to support their position.  The record from these documents

---

[47]  Id. *quoting* Chapman Engineers v. Natural Gas Sales Co., 766 F.Supp. 949, 957-958(14), (16) (D. Kan. 1991).
[48]  Stogner Affidavit, at paragraphs 12 and 18.
[49]  Id. at paragraph 12 and Exhibit B attached hereto.
[50]  Stogner Affidavit, at paragraph 30.
[51]  Id.

is clear that no attorney client relationship ever existed between Stogner and the Defendants.  Furthermore, Defendants cannot prove the existence of an implied relationship under Georgia law.  The Defendants never paid Stogner a fee or a retainer; Defendants were represented by counsel at all times pertinent hereto; and Defendants never communicated to Stogner that they were relying or seeking his professional advice.  Defendants' assertion that Stogner is needed as a necessary witness is also misplaced as the information is available through numerous alternative means.

Defendants' Motion must be proved by the evidence and cannot be created unilaterally in the mind of the "would be" client.[52]  Defendants' Motion is not founded in fact or law and must be dismissed in its entirety.

Respectfully submitted this the 27th day of July, 2010.

BUSCH, SLIPAKOFF & SCHUH, LLP

/s/ Jason B. Godwin
Bryan E. Busch
Georgia Bar No. 006055
Jason B. Godwin
Georgia Bar No.  142226

---

[52] Guillebeau v. Jenkins, 182 Ga. App. 225, 230 (1987).

3350 Riverwood Parkway
Suite 1550
Atlanta, Georgia 30339
Phone:  (770) 790-3550
Facsimile: (770) 350-3520

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MARCELINO SOLIS,  )
                  )
       Plaintiff, )
                  )
vi.               )
                  )       Civil Action File
THE TACO MAKER, INC.,  )
FRANSGLOBAL CORPORATION, )   No.  1:09-cv-3293-RWS
AND CARLOS BUDET,  )
                  )
       Defendants and  )
       Counterclaimants,  )
                  )
vi.               )
                  )
BUSCH, SLIPAKOFF & SCHUH,  )
LLP and SHANE STOGNER,  )
                  )
       Third-Party Defendants.  )
_____)

## CERTIFICATION PURSUANT TO LR7.1 NDGa.

The undersigned counsel, pursuant to LR7.1 NDGa., hereby certifies that this filing has been prepared in a font and point selection approved in LR5.1, NDGa., Times New Roman 14, and with margin as specified therein.

This the 27th day of July, 2010.

BUSCH, SLIPAKOFF & SCHUH, LLP

/s/ Jason B. Godwin
Bryan E. Busch
Georgia Bar No. 006055
Jason B. Godwin
Georgia Bar No.  142226

3350 Riverwood Parkway
Suite 1550
Atlanta, Georgia 30339
Phone:  (770) 790-3550
Facsimile: (770) 350-350

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| MARCELINO SOLIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action File No. |
| | ) | |
| THE TACO MAKER, INC., | ) | 1:09-cv-3292 |
| FRANSGLOBAL CORPORATION | ) | |
| and CARLOS BUDET, | ) | |
| | ) | |
| Defendants. | ) | |

<u>Affidavit of Shane P. Stogner</u>

Personally appeared before the undersigned officer duly authorized to administer oaths, Shane Stogner, who having been duly sworn, deposes and states as follows:

1. My name is Shane P. Stogner.  I am over the age of eighteen (18) and otherwise competent to give this Affidavit.  This Affidavit is based upon my own personal knowledge.

2. I am a licensed attorney authorized to practice law in the State of Georgia and a member of the State Bar of Georgia since 2005.

3. I am a partner at the Atlanta law firm of Busch, Slipakoff & Schuh, LLP ("BSS") where I specialize in corporate and transactional law.

4. Before becoming a partner at BSS, I was an associate attorney at the law firm formerly known as Taylor, Busch, Slipakoff & Duma, LLP ("TBSD").

5. While at TBSD, and later at BSS, I represented Latino Enterprises, Inc. and its principal, Marcelino Solis ("Mr. Solis") in numerous legal and corporate transactions and various other legal matters.

6. At some point in March and April 2008, Mr. Solis informed me that he had been approached by representatives of FransGlobal Corporation ("FG") and the Taco Maker, Inc. ("TMI").

7. Mr. Solis was approached in Atlanta by Mr. Carlos Budet ("Budet") on behalf of FG and TMI.

8. Budet solicited an investment from Mr. Solis, whereby, Mr. Solis would invest money in FG/TMI and in turn Latino Enterprises, Inc. would receive lucrative food production contracts from TMI.

9. Mr. Solis was informed that his investment would be used to buyout a current shareholder in FG/TMI, Mr. Lausell. ("Lausell").

10. I was commissioned by Mr. Solis to draft an appropriate Stock Purchase Agreement ("SPA") to effectuate the Lausell buyout.

11. Mr. Solis also directed me to be involved in the appropriate capital restructuring and reformation that FG/TMI would have to undergo following his investment.

12. I conducted an arms-length negotiation of the terms of the SPA with representatives of FG/TMI, including but not limited to Mr. Jose Aponte Carro, ("Carro") who was acting as an attorney at law on behalf of FG/TMI.

13. At the direction of my client, Mr. Solis, I accompanied him to Puerto Rico to meet with representatives of FG/TMI (including Carro) and at their invitation sat in on a Board of Directors meeting of FG/TMI.

14. The SPA was never approved by either FG/TMI, Mr. Solis, or Lausell.

15. The version of the SPA attached to FG/TMI and Budet's Answer contains no price, no consideration listed, no amount of shares to be exchanged, and no signatures by any party.

16. On or about July 11, 2008, Plaintiff informed me that he no longer wanted to invest in FG/TMI and the Lausell buyout was never consummated; soon thereafter Budet approached Mr. Solis with a second investment opportunity.

17. This new investment opportunity would require Mr. Solis to invest $125,000.00 with FG/TMI, to be wire transferred directly to Budet.

18. I worked with Solis to insure that the $125,000.00 wire transfer could be completed.

19. In exchange for this $125,000.00, Latino Enterprises, Inc. would receive lucrative food production contracts from TMI.

20. My client, Mr. Solis demanded that I be involved in the eventual corporate restructuring and recapitalization that would become necessary after he invested in FG/TMI.

21. I drafted and sent a proposed engagement letter ("Letter") to FG/TMI which disclosed a potential conflict with my current representation of Mr. Solis and limited my potential representation of FG/TMI to this proposed corporate restructuring and recapitalization that would become necessary after Plaintiff invested in FG/TMI.

22. In this Letter I requested a retainer of $1,000 from FG/TMI.

23. In this Letter I requested that it be signed if FG/TMI agreed to its proposed terms.

24. I never signed the Letter, nor did anyone on behalf of FG/TMI.

25. I never received any fees from FG/TMI or Budet.

26. To date, Latino Enterprises, Inc. has never been given any food production contracts from FG/TMI.

27. To date, Mr. Solis has never been given any shares of stock or anything else that would represent an ownership interest in FG/TMI after his investment of $125,000.00.

28. At all times pertinent hereto, FG/TMI was represented by their own counsel, including but not limited to, Carro.

29. No one at FG/TMI ever informed me that they were looking to me for legal advice nor did anyone at FG/TMI inform me that they were relying on me as their attorney.

30. Any information I gained during the representation of Mr. Solis can be corroborated by many other witnesses for the Plaintiff, including but not limited to, Mr. Solis, and Mr. Adam Oliaro, in addition to Defendant Budet, and corporate officers of FG/TMI.

**FURTHER AFFIANT SAYETH NOT.**

_____
Shane P. Stogner

Sworn to before and subscribed before
me this 27 day of July, 2010.

_____
Notary Public

My Commission Expires: _____

# EXHIBIT A

**Shane Stogner**

| | |
|---|---|
| **From:** | Shane Stogner [SStogner@taylor-busch.com] |
| **Sent:** | Tuesday, April 22, 2008 2:45 PM |
| **To:** | 'Jose Aponte-Carro' |
| **Subject:** | RE: Taco Maker |

Thank you sir.  I get the Confidentiality Agreement signed as soon as possible.  My basic requests will be to see copies of the relevant corporate documents (articles of incorporation, by-laws, shareholder or buy-sell agreement if any) and financials for my client to review.  It sounds like an exciting opportunity and we appreciate the chance to do business together.  I look forward to working with you,

Shane

---

**From:** Jose Aponte-Carro [mailto:apontecarro@gmail.com]
**Sent:** Tuesday, April 22, 2008 2:25 PM
**To:** sstogner@taylor-busch.com
**Subject:** Taco Maker

Mr. Shane Stogner

Mr. Carlos Budet informed us that you represent Mr. Marcelino in all Corporate manners. I have been given full authority to inform and negotiate with you all terms concerning a near-future investment of Mr. Marcelino in Taco Maker.

As you must know Mr. Budet has asked for full confidentiality on this manner, as of right now we are planning the agenda that will lead us to acquaire the mayority fo said corporation.

Taking this in consideration,  I am going to start sending a Confidentiality Agreement so you can discuss and sign along with your client.

Tomorrow I am having my second meeting with a group of shareholders were all this matter will be discussed. I will write you after that.

Any special request just let me know.

Sincerely,

Jose A. Aponte Carro, esq.
APONTE CARRO LAW OFFICES, PSC.
172 Oneil St.
San Juan, PR 00918
email: apontecarro@gmail.com
cel: (787) 462-6254
Tel/Fax: (787) 653-5378

EXHIBIT B

## Shane Stogner

| | |
|---|---|
| **From:** | Shane Stogner [SStogner@taylor-busch.com] |
| **Sent:** | Thursday, July 10, 2008 3:37 PM |
| **To:** | 'cbudet@fransglobal.com' |
| **Cc:** | 'Jose Aponte' |
| **Subject:** | stock purchase agreement |
| **Attachments:** | Stock Purchase Agmnt - Solis - Lausell - FransGlobal.DOC |

This is a ROUGH draft and needs to be edited a lot but most of the points are made.  Let me know what you think

Shane

*Shane Stogner, Esq.*
*Taylor, Busch, Slipakoff & Duma, LLP*
*1600 Parkwood Circle, Suite 200*
*Atlanta, Georgia 30339*
*Ph: 678-336-7161*
*Fax: 770-434-7376*
Email: sstogner@taylor-busch.com

NOTICE: This communication (together with all attachments) may contain privileged or confidential information and its sender reserves and asserts all rights that may apply to it. If you are not the intended recipient or believe that you have received this communication in error, please do not print, copy, retransmit, disseminate or otherwise use the information. Also, please indicate to the sender that you have received this communication in error and delete the copy you received. If you have not executed an engagement letter with this firm, we do not represent you as your attorney and no duties are intended or created by this communication. Most legal rights have time limits, and this e-mail does not constitute advice on the application of limitation periods unless otherwise so expressly stated. IRS CIRCULAR 230 Disclosure: Under U.S. Treasury regulations, we are required to inform you that any advice contained in this e-mail or any attachment hereto is not intended to be used, and cannot be used, to avoid penalties imposed under the Internal Revenue Code.

**Shane Stogner**

| | |
|---|---|
| **From:** | Jose Aponte [japonte@fransglobal.com] |
| **Sent:** | Tuesday, July 15, 2008 12:56 PM |
| **To:** | Shane Stogner |
| **Subject:** | RE: Stock Purchase Agreement |

Thank you my friend

**José Aponte**
**Vice President COO & CLO**

**FransGlobal Corp.**
**The Taco Maker Inc.**
**Tel 787-273-3160**
**Email: japonte@fransglobal.com**

CONFIDENTIALITY NOTICE: This email communication and any attachments may contain confidential and privileged information for the use of designated recipients named above. If you are not the intended recipient, you are hereby to notify that you have received this communication in error and that any review, disclosure, dissemination, distribution or copying of it or its contents is prohibited. If you have received this communication in error, please notify FransGlobal immediately by telephone at (787) 273-3160 and destroy all copies of this communication and any attachments.

**From:** Shane Stogner [mailto:SStogner@taylor-busch.com]
**Sent:** Tuesday, July 15, 2008 12:51 PM
**To:** Jose Aponte
**Cc:** 'Adam '; Carlos Budet
**Subject:** RE: Stock Purchase Agreement

By copy to Adam I am forwarding your request as he is in a better position to find out the status

Shane

**From:** Jose Aponte [mailto:japonte@fransglobal.com]
**Sent:** Tuesday, July 15, 2008 12:34 PM
**To:** Shane Stogner, Esq.
**Cc:** Carlos Budet
**Subject:** RE: Stock Purchase Agreement

Shane:

Hi, sorry to bother you once again, please send me the wiring confirmation so we can check in the account. The reason is that as of today, the account doesn't reflects any transaction and Carlos wants to check that the information is correct.

Thanks,

**José Aponte**
**Vice President COO & CLO**

**FransGlobal Corp.**
**The Taco Maker Inc.**
**Tel 787-273-3160**
**Email: japonte@fransglobal.com**

CONFIDENTIALITY NOTICE: This email communication and any attachments may contain confidential and privileged information for the use of designated recipients named above. If you are not the intended recipient, you are hereby to notify that you have received this communication in error

and that any review, disclosure, dissemination, distribution or copying of it or its contents is prohibited.  If you have received this communication in error, please notify FransGlobal immediately by telephone at (787) 273-3160 and destroy all copies of this communication and any attachments.

**From:** Shane Stogner, Esq. [mailto:sstogner@taylor-busch.com]
**Sent:** Friday, July 11, 2008 1:46 PM
**To:** Jose Aponte
**Cc:** Carlos Budet
**Subject:** RE: Stock Purchase Agreement

Can you send us the wiring instructions for whatever bank account you want us to use?  We are trying to see if we can get the money


Shane

**From:** Jose Aponte [mailto:japonte@fransglobal.com]
**Sent:** Thursday, July 10, 2008 9:07 PM
**To:** Shane Stogner
**Subject:** Stock Purchase Agreement

Shane:

I am suggesting some simple changes, the ones blinking are for elimination and the ones in red are amendments.
Let me know in the morning or tonight, anyway please try to send this tomorrow morning to Miguel to see if we can close the deal.
As a matter of fact Tomas sent a letter to Miguel today that he was going to have a meeting with some people and is trying to convince Miguel to sell both of their shares so the buyer could have mayority.
And as you know we are very worried about that.
Hope to finish this tomorrow, have a good one,
Bye...

**José Aponte**
**Vice President COO & CLO**

**FransGlobal Corp.**
**The Taco Maker Inc.**
**Tel 787-273-3160**
**Email: japonte@fransglobal.com**

**CONFIDENTIALITY NOTICE:**  This email communication and any attachments may contain confidential and privileged information for the use of designated recipients named above.  If you are not the intended recipient, you are hereby to notify that you have received this communication in error and that any review, disclosure, dissemination, distribution or copying of it or its contents is prohibited.  If you have received this communication in error, please notify FransGlobal immediately by telephone at (787) 273-3160 and destroy all copies of this communication and any attachments.

**Shane Stogner**

| | |
|---|---|
| **From:** | Jose Aponte [japonte@fransglobal.com] |
| **Sent:** | Tuesday, July 15, 2008 5:09 PM |
| **To:** | Shane Stogner |
| **Cc:** | Carlos Budet |
| **Subject:** | RE: |
| **Attachments:** | 20080715120245059.pdf |

Shane:

This is a copy of a check from Carlos account, I believe that's what you need.
Check and see if the information is complete, remember this is going to Carlos account, not Taco Maker.
Please let me know if you need something else.

**José Aponte**
**Vice President COO & CLO**

**FransGlobal Corp.**
**The Taco Maker Inc.**
**Tel 787-273-3160**
**Email: japonte@fransglobal.com**

**CONFIDENTIALITY NOTICE:** This email communication and any attachments may contain confidential and privileged information for the use of designated recipients named above. If you are not the intended recipient, you are hereby to notify that you have received this communication in error and that any review, disclosure, dissemination, distribution or copying of it or its contents is prohibited. If you have received this communication in error, please notify FransGlobal immediately by telephone at (787) 273-3160 and destroy all copies of this communication and any attachments.

---

**From:** Shane Stogner [mailto:SStogner@taylor-busch.com]
**Sent:** Tuesday, July 15, 2008 3:17 PM
**To:** Jose Aponte; Carlos Budet
**Subject:** FW:

Something is wrong with the information below. The wire was rejected (which also cost us $40 fee)

Shane

---

**From:** Angel Rodriguez [mailto:arodriguez@fransglobal.com]
**Sent:** Friday, July 11, 2008 3:58 PM
**To:** sstogner@taylor-busch.com
**Cc:** Cecilia Diaz
**Subject:**

Here is the information of the bank account of Mr. Carlos Budet as per your request today.

The Bank is: Banco Popular de PR
Branch: Popular Center in Hato Rey
Acct.#

Routing Number

Angel Rodriguez

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MARCELINO SOLIS,                         )
                                         )
    Plaintiff,                        )
                                         )
vii.                                     )
                                         )      Civil Action File
THE TACO MAKER, INC.,                    )
FRANSGLOBAL CORPORATION,                 )      No.  1:09-cv-3293-RWS
AND CARLOS BUDET,                        )
                                         )
    Defendants and                    )
    Counterclaimants,                 )
                                         )
vii.                                     )
                                         )
BUSCH, SLIPAKOFF & SCHUH,                )
LLP and SHANE STOGNER,                   )
                                         )
    Third-Party Defendants.           )
_____)

## CERTIFICATE OF SERVICE

This is to certify that this day I have served the within and foregoing Response of Plaintiff to Defendants' Response in Opposition to Defendants' Motion to Disqualify and Certification Pursuant to LR 7.1D, ND Ga. to be served upon all other parties in this action via electronic filing and email using the Court's CM/EMF service, addressed to:

16

Michael Stegawski
Convergent Advisory Services, P.A.
5200 NW 33rd Avenue
Suite 207
Fort Lauderdale, Florida 33309
<u>michael@globalsecuritieslaw.com</u>

This the 27th day of July, 2010.

BUSCH, SLIPAKOFF & SCHUH, LLP

/s/ Jason B. Godwin
Bryan E. Busch
Georgia Bar No. 006055
Jason B. Godwin
Georgia Bar No.  142226